# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **PAMELA ARNOLD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-15-0183-F** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Pamela Arnold brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. United States District Judge Stephen Friot has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 9, hereinafter "R. _").[1] The parties have briefed their positions, and the case is now ready for decision. For the

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

reasons set forth below, the undersigned recommends that the Commissioner's decision be affirmed.

## PROCEDURAL HISTORY

Plaintiff protectively filed her applications for DIB and SSI on March 1, 2010, alleging a disability onset date of December 12, 2009. R. 227-43, 285-87. Following denial of Plaintiff's applications initially and on reconsideration, a hearing was held before an Administrative Law Judge ("ALJ"). R. 47-92, 162-70, 174-79. The ALJ issued an unfavorable decision on May 6, 2013. R. 23-37. The Appeals Council denied Plaintiff's request for review, making the ALJ's unfavorable decision the final decision of the Commissioner. R. 1-7; *see also* 20 C.F.R. §§ 404.981, 416.1481. This action for judicial review followed.

## ADMINISTRATIVE DECISION

The Commissioner uses a five-step sequential evaluation process to determine eligibility for disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 12, 2009, the alleged onset date. R. 25; *see* 20 C.F.R. §§ 404.1571, 416.971. At step two, the ALJ determined that Plaintiff had the severe impairments of "arthralgias and myalgias and discogenic lumbar pain and neck pain; fibromyalgia; diabetes; obesity; depression; [and] anxiety." R. 25-30; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the presumptively disabling

impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 30-32; *see* 20 C.F.R. §§ 404.1520(d), 416.920(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her impairments. R. 32-35; *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The ALJ found that Plaintiff had the RFC to perform a range of unskilled, sedentary work. *See* R. 32, 36. Specifically, the ALJ found that Plaintiff could:

> lift/carry 10 pounds occasionally and less than 10 pounds frequently[;] walk/stand up to 2 of 8 hours with normal breaks; . . . sit for up to 6 of 8 hours, with normal breaks[; and] perform simple tasks with routine supervision.

R. 32; *see* 20 C.F.R. §§ 404.1567(a) (defining "sedentary work"), 416.967(a) (same). At step four, the ALJ assumed that Plaintiff was unable to perform past relevant work and that transferability of job skills was not a material issue. R. 35; *see* 20 C.F.R. §§ 404.1565, .1568, 416.965, .968.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work experience, and RFC—could perform. Taking into consideration the hearing testimony of a vocational expert ("VE") regarding the degree of erosion to the unskilled sedentary occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform occupations such as telephone quotation clerk, addresser, and charge account clerk, all of which offer jobs that exist in significant numbers in the national economy. R. 36; *see* 20 C.F.R. §§ 404.1545(a)(5)(ii), 416.945(a)(5)(ii). On this basis, the ALJ concluded that Plaintiff had not been under a disability, as defined in the

Social Security Act, from December 12, 2009, though the date of the decision. R. 36; *see* 20 C.F.R. §§ 404.1520(g), 416.920(g).

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ANALYSIS

On appeal, Plaintiff raises three claims of error. First, Plaintiff alleges that the SSA Appeals Council improperly failed to consider additional evidence submitted by

Plaintiff during the pendency of her administrative appeal. Pl.'s Br. (Doc. No. 13) at 8-10. Next, Plaintiff challenges the ALJ's step three consideration of whether Plaintiff's fibromyalgia medically equaled a listed impairment. Pl.'s Br. at 10-11. Finally, Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence and thus "is legal error." Pl.'s Br. at 11-13. The undersigned addresses each argument in turn.

### A. The Appeals Council's Rejection of Late-Submitted Evidence

#### 1. Applicable Standards

Pursuant to SSA regulations, the Appeals Council

> will consider all the evidence in the [ALJ] hearing record as well as any new and material evidence submitted to it which relates to the period on or before the date of the [ALJ] hearing decision. If [a claimant] submit[s] evidence which does not relate to the period on or before the date of the [ALJ] hearing decision, the Appeals Council will return the additional evidence to [the claimant] with an explanation as to why it did not accept the additional evidence and will advise [the claimant] of [his or her] right to file a new application.

20 C.F.R. §§ 404.976(b)(1), 416.1476(b)(1) (substantially the same); *accord id.* §§ 404.970(b) ("If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ] hearing decision."), 416.1470(b) (substantially the same). When a claimant seeks administrative review, the Appeals Council "shall evaluate the entire record," "including the new and material evidence submitted if it relates to the period on or before the date of the [ALJ] hearing decision," and shall "review the case if it finds that the

[ALJ's] action, findings, or conclusion is contrary to the weight of evidence currently of record." *Id.* §§ 404.970(b), 416.1470(b) (substantially the same).

Whether evidence submitted by the claimant to the Appeals Council is "new, material, and chronologically pertinent," as required to qualify for consideration on administrative appeal pursuant to the above-cited regulations, "is a question of law subject to our *de novo* review." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003); *accord Krauser v. Astrue*, 638 F.3d 1324, 1328, 1329 (10th Cir. 2011). "If the evidence does not qualify, it plays no further role in judicial review of the Commissioner's decision." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004); *accord Wall*, 561 F.3d at 1064. If, however, "the evidence qualifies but the Appeals Council did not consider it, the case should be remanded for further proceedings." *Chambers*, 389 F.3d at 1142.

"Evidence is **new** within the meaning of [20 C.F.R. §§ 404.970(b) and 416.1470(b)] if it is not duplicative or cumulative." *Threet*, 353 F.3d at 1191 (citing *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)) (emphasis added). "Evidence is **material** to the determination of disability if there is a reasonable possibility that it would have changed the outcome." *Id.* (citing *Wilkins*, 953 F.2d at 96) (emphasis added). Evidence is **chronologically relevant** if it "relates to the period on or before the date of the [ALJ's] decision." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994); *see also Chambers*, 389 F.3d at 1143; *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997) ("An implicit requirement is that the new evidence pertain to

the time period for which benefits are sought, and that it not concern later-acquired disabilities or subsequent deterioration of a previously non-disabling condition.").

2.  Background

After the ALJ's decision was issued but prior to disposition of her administrative appeal, Plaintiff, through counsel, submitted additional medical records to the Appeals Council.  *See* R. 2, 93-155, 1299-1300.  The Appeals Council "considered the additional evidence listed on the enclosed Order of Appeals Council [Ex. 63F, R. 1299-1300]" but "found that this information [did] not provide a basis for changing the [ALJ's] decision." R. 1-2.  The Appeals Council then found that the other additional evidence (R. 93-155, which was created after the ALJ's hearing decision of May 6, 2013) did not qualify for consideration and, thus, refused to consider it when deciding whether to review the ALJ's decision:

> We also looked at records dated May 17, 2013 through June 4, 2013 from Kickapoo Tribal Health; records dated July 9, 2013 through September 9, 2013 from M. Monem Gillan, M.D.; records dated August 8, 2013 from Creek Nation Hospital; records dated March 4, 2014 through April 16, 2014 from Okemah Indian Clinic; records dated March 26, 2014 from Oklahoma City ENT Clinic; records dated June 17, 2014 through July 8, 2014 from Oklahoma Allergy and Asthma Clinic; and records dated July 2, 2014 from Barbara E. Moore, APRN.  The Administrative Law Judge decided your case through May 6, 2013.  This new information is about a later time.  Therefore, it does not affect the decision about whether you were disabled beginning on or before May 6, 2013.
>
> If you want us to consider whether you were disabled after May 6, 2013, you need to apply again.  The new information you submitted is available in your electronic file for you to use in your new claim. . . . .

R. 2.  The Appeals Council concurrently denied review of Plaintiff's case.  R. 1; *see* 20 C.F.R. §§ 404.970(a), (b), 416.1470(a), (b).

3. Discussion

Plaintiff objects that the Appeals Council's refusal to consider the post-dated evidence was improper because, the "records represent new and material evidence that is related to the period of the ALJ's decision, as the records reflect the ongoing treatment Plaintiff has sought with regard to her fibromyalgia." Pl.'s Br. at 9. According to Plaintiff, the additional evidence was new, material, and temporally related to the time period of the ALJ's decision, such that the Appeals Council's failure to consider the evidence was a legal error that requires remand. Pl.'s Br. at 10. The Commissioner responds that Plaintiff does not "argue that the [rejected] records undermine the ALJ's decision in any way" or "address whether the ALJ's decision is supported by substantial evidence in light of the additional evidence." Def.'s Br. (Doc. No. 19) at 6. Defendant further notes that the rejected evidence "does not purport to relate to the time period considered by the ALJ" and argues that Plaintiff "does not offer any argument showing temporal relevance." Def.'s Br. at 7.

To support her contention that the additional evidence was chronologically pertinent to the relevant time period and should have been accepted by the Appeals Council, Plaintiff simply states that the records "clearly relate to the treatment [she] was receiving throughout the period in question, including the time period of the ALJ's decision," but does not further elaborate on how or why the records "clearly relate." *See* Pl.'s Br. at 9. Plaintiff does cite to the unpublished Tenth Circuit decision *Aragon v. Apfel*, No. 98-2097, 1998 WL 889400 (10th Cir. Dec. 22, 1998), Pl.'s Br. at 9; but this case is not dispositive. In *Aragon*, the Appeals Council had *considered* a treating

physician's opinion (made "just days" after the ALJ's decision) but found that this late-submitted evidence did not provide a basis for changing the ALJ's denial of benefits. *See Aragon*, 1998 WL 889400, at *2, *3.[2] The Tenth Circuit characterized the evidence as "temporally relevant" without elaboration and held that the Appeals Council's "reflexive confirmation of the ALJ's determination" did not adequately support the rejection of this treating physician opinion, which was "contrary new evidence from the same medical authority the ALJ relied on" in reaching the RFC assessment. *Id.* at *3. That decision does not directly support Plaintiff's arguments

On the other hand, the Commissioner cites *O'Dell v. Shalala* for the proposition that this Court need not review the Appeals Council's evaluation of the additional evidence because the Court's substantial-evidence inquiry includes examination of such evidence. Def.'s Br. at 6.[3] But, again, in that case the Appeals Council *accepted* the new evidence submitted by the claimant after the ALJ's decision was issued, rather than rejecting the evidence as nonqualifying under the regulations. As such, *O'Dell* does not govern the scope of the Court's examination on the current appeal. *See O'Dell*, 44 F.3d

---

[2] Although the background section of the decision contains the statement that the Appeals Council "summarily rejected the new evidence," the analysis clarifies that the Appeals Council concluded that "the additional evidence provides no basis for changing the ALJ's decision"—a conclusion that could be reached only upon consideration of the new evidence. *See Aragon*, 1998 WL 889400, at *1, *3.

[3] The Commissioner's assertion that "the Court should not review the Appeals Council's evaluation of the additional evidence," Def.'s Br. at 7, also fails in light of Tenth Circuit case law stating that when the evaluation ends with a determination to *not* consider evidence the Appeals Council's decision is subject to *de novo* review. *See Threet*, 353 F.3d at 1191; *Krauser*, 638 F.3d at 1328, 1329.

at 857 ("The Appeals Council decided that the new evidence did not provide a basis for changing the ALJ's decision and denied review.").[4]

The undersigned therefore has reviewed the relevant documents to determine whether the Appeals Council in any instance erred in concluding that Plaintiff's late-submitted evidence was nonqualifying and so did not "affect the decision about whether you were disabled beginning on or before May 6, 2013."  R. 2; *see* 20 C.F.R. §§ 404.970(b), .976(b)(1), 416.1470(b), .1476(b)(1).  As detailed below, the Appeals Council did not so err.

Following the ALJ's issuance of her written decision on May 6, 2013, Plaintiff submitted evidence to the Appeals Council consisting of approximately 60 pages of medical records.  *See* R. 93-155.  As noted above, none of the evidence submitted was authored or generated prior to the issuance of the ALJ's decision.  In one unpublished decision, the Tenth Circuit has indicated that the fact that a record is created after the ALJ's decision has been issued can be sufficient, by itself, for a reviewing court to

---

[4] The Tenth Circuit's broad statement in *O'Dell* that "the new evidence becomes part of the administrative record to be considered when evaluating the Secretary's decision for substantial evidence" was expressly premised upon that new evidence having qualified for inclusion in the record under 20 C.F.R. § 404.970(b).  *See O'Dell*, 44 F.3d at 859.  Further, the Tenth Circuit has since clarified:

> If the evidence does qualify [as new, material, and chronologically relevant] *and* the Appeals Council considered it in connection with the claimant's request for administrative review (regardless of whether review was ultimately denied), it becomes part of the record we assess in evaluating the Commissioner's denial of benefits under the substantial-evidence standard.

*Chambers*, 389 F.3d at 1142 (emphasis added) (citing *O'Dell*, 44 F.3d at 859).

conclude that the record does not qualify as chronologically related under the relevant regulations. *See Tollett v. Barnhart*, 60 F. App'x 263, 265 (10th Cir. 2003); *accord Parks v. Colvin*, No. CIV-13-450-R, 2014 WL 2589310, at *1, *3-4 (W.D. Okla. June 9, 2014); *cf. Threet*, 353 F.3d at 1188, 1191 (finding "timeliness" of evidence was "no problem" where evidence was generated one day prior to ALJ's decision). In other decisions, however, the court has applied a more nuanced approach by scrutinizing the nature of individual items of evidence for purposes of the criterion of 20 C.F.R. §§ 404.970(b), .976(b)(1), 416.1470(b), .1476(b)(1). *See, e.g.*, *Wall*, 561 F.3d at 1064; *Chambers*, 389 F.3d at 1143-44; *Wilson v. Apfel*, No. 99-3310, 2000 WL 719457, at *2 (10th Cir. June 5, 2000); *Breedlove v. Callahan*, No. 97-7024, 1997 WL 572145, at *2 (10th Cir. Sept. 8, 1997); *cf. Tollett*, 60 F. App'x at 265 (rejecting records based upon their post-decision creation date but also noting that "the evidence does not demonstrate that [claimant] was disabled by depression as of the date of the ALJ's decision because it does not indicate that he was suffering from depression" prior to that creation date). Applying the latter approach, the undersigned examines Plaintiff's late-submitted evidence, relying upon the factors set forth by the Tenth Circuit to determine whether any item of Plaintiff's evidence was improperly rejected by the Appeals Council as failing to qualify for consideration under 20 C.F.R. §§ 404.970(b), .976(b)(1), 416.1470(b), .1476(b)(1).

a. _Records dated May 17, 2013 and June 4, 2013 from Kickapoo Tribal Health_

The ALJ issued her decision on May 6, 2013. The records from Plaintiff's visits to Kickapoo Tribal Health include two treatment notes dated May 17, 2013 and June 4, 2013. R. 151-55. Because these records relate to time periods that are close to the decision date, the undersigned is "reluctant to rely on chronological remoteness" as the sole reason "to disqualify" them. *See Chambers*, 398 F.3d at 1143. Despite their chronology, however, they do not comport with Plaintiff's assertion that they "relate to Plaintiff's ongoing problems discussed at [the] hearing" or "reflect the ongoing treatment Plaintiff has sought with regard to her fibromyalgia." *See* Pl.'s Br. at 9.

The May 17, 2013 record reflects complaints of sinus pain and nose bleeds, as well as an assessment of sinusitis and other upper respiratory infection. R. 152-55. Despite Plaintiff's assertions, this record does not provide any information regarding her fibromyalgia and, thus, Plaintiff has not shown that the record is material to Plaintiff's fibromyalgia claims on or before May 6, 2013. Nor is such record otherwise relevant. Sinus and respiratory ailments were not presented as a basis for disability or mentioned by either Plaintiff or her counsel at the hearing before the ALJ.[5] *See* R. 47-92, 227-36,

---

[5] A review of the record reveals a few medical records with diagnoses of sinus or respiratory issues. *See* R. 361-65 (4/29/08, upper respiratory infection and sinusitis; duplicate records at 399-403), 509 (3/26/08, sinusitis; duplicate record at 906), 691-92 (10/25/09, bronchitis; duplicate records at 854-55, 1052-53, 1190-91), 698-99 (1/1/09, upper respiratory infection), 761-65 (9/1/10, bronchitis; duplicate record at 789-92), 1134-37 (11/8-25/08, bronchitis, sinusitis), 1270-98 (2/19/13, exertional asthma). None of these records indicate that sinusitis or respiratory problems resulted in functional limitations, nor has Plaintiff argued that they did.

288-98.  Because Plaintiff has never cited sinus or respiratory problems as having any bearing on her ability to work, such problems were not impairments that the ALJ was required to consider in her decision.  *See Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) (holding claimant "must in some fashion raise the issue sought to be developed").

The June 4, 2013 record reflects complaints of numbness and pain in Plaintiff's arms.  R. 151.  As such, the record might "reflect the ongoing treatment Plaintiff has sought with regard to her fibromyalgia."  *See* Pl.'s Br. at 9.  This record does not, however, provide any information regarding Plaintiff's condition on or before May 6, 2013.  Accordingly, the evidence is not chronologically relevant to the appropriate time period.  *See Wilson*, 2000 WL 719457, at *2 (finding that claimant's doctor's letter not chronologically relevant when it included "some indication that . . . treatment was ongoing [but] there is nothing in the letter indicative of [claimant's] condition on or before [date of ALJ decision]").

Because Plaintiff has not shown that the records dated May 17, 2013 and June 4, 2013 from Kickapoo Tribal Health meet the standards for consideration under 20 C.F.R. §§ 404.970(b), .976(b)(1), 416.1470(b), and .1476(b)(1), the undersigned finds that the Appeals Council did not err in rejecting them.

### b. *Records dated July 9, 2013 through September 9, 2013 from M. Monem Gillan, M.D.*

Though the Appeals Council decision references records dated July 9, 2013 through September 9, 2013 from M. Monem Gillan, MD, the records themselves are

dated July 9, 2013, and July 11, 2013. *Compare* R. 2, *with* R. 146-49. These records

indicate post-decision treatment Plaintiff had sought for fibromyalgia, but most relevantly

state:

> She has fibromyalgia syndrome and she said Lyrica has helped a lot and
> she is very happy with it. Tizanidine is also helping with the muscle spasm,
> Lortab was helping with the pain but she is out of it, Ambien helps with the
> sleep. I told her to continue all medicines [the] same, continue doing some
> swimming and water aerobic exercises.

R. 149. These records do not undermine any reason relied upon by the ALJ for a finding

of nondisability; indeed, they bolster the ALJ's findings that Plaintiff's medications were

effective (R. 33) and that Plaintiff's physicians encouraged her to be active and exercise

(R. 34). As such, these records would not support a finding of disability. Therefore,

even if Plaintiff could show that the records provided information about her condition on

or before May 6, 2013—and thus were temporally related—there is not a "reasonable

possibility that [they] would have changed the outcome" of the ALJ's decision and so

they are not material. *See Threet*, 353 F.3d at 1191.

The referenced records also reflect complaints of right hip pain and treatment for

right femoral trochanter bursitis, but a review of the record finds no previous complaints

of or treatment for this condition.[6] Accordingly, to the extent the records dated July 9,

2013 and July 11, 2013 from Dr. Gillan indicate an impairment of right femoral

trochanter bursitis, such records reflect a new impairment and, therefore, are neither

material nor chronologically relevant to Plaintiff's disability claim. *See Chambers*, 398

---

[6] The record indicates previous treatment for left femoral trochanteric bursitis, but not for
right. *See* R. 1219, 1245-48.

F.3d at 1144; *Jones*, 122 F.3d at 1154; *see also Wall*, 561 F.3d at 1064 (finding medical record regarding an injury sustained after the ALJ's decision could not be considered because it did "not relate to the period on or before the date the ALJ issued his decision") (internal quotation marks and alteration omitted).

Because Plaintiff has not shown that the records dated July 9, 2013 and July 11, 2013 from Dr. Gillan meet the standards for consideration under 20 C.F.R. §§ 404.970(b), .976(b)(1), 416.1470(b), and .1476(b)(1), the undersigned finds that the Appeals Council did not err in rejecting them.

### c. *Record dated August 8, 2013 from Creek Nation Hospital*

The August 8th record reflects "followup on chronic medical conditions" and indicates several "chronic problems" that were addressed at the visit. R. 141-44. Even if construed to be referring to fibromyalgia or another at-issue impairment, this record does not provide any new information regarding Plaintiff's condition on or before May 6, 2013, but instead reflects exam results, medications, and treatment plans as of August 8, 2013. Accordingly, the evidence is not chronologically relevant to the appropriate time period. *See Wilson*, 2000 WL 719457, at *2; *see also Chambers*, 389 F.3d at 1144 (finding evidence not material when it "indicated at most the mere presence of a condition with no vocationally relevant impact—a patently inadequate basis for a disability claim") (internal quotation marks omitted). Because Plaintiff has not shown that the record dated August 8, 2013 from Creek Nation Hospital meets the standards for consideration under 20 C.F.R. §§ 404.970(b), .976(b)(1), 416.1470(b), and .1476(b)(1), the undersigned finds that the Appeals Council did not err in rejecting them.

### d. Records dated March 4, 2014 and April 16, 2014 from Okemah Indian Clinic

On March 4, 2014, Plaintiff again sought treatment for "followup on chronic medical conditions" as well as complaints of "chronic sinus problems." R. 135-39. Regarding Plaintiff's "ongoing treatment," this report is similar to the August 8, 2013 report discussed above and does not provide any information regarding Plaintiff's condition on or before May 6, 2013, but instead reflects exam results, medications, and treatment plans as of March 4, 2014. As such, it is not chronologically relevant to the time period at issue. *See Wilson*, 2000 WL 719457, at *2. Further, to the extent these records relate to Plaintiff's sinus complaints, they are not material to Plaintiff's claims of disability for the reason previously discussed. *See Chambers*, 389 F.3d at 1144.

On April 16, 2014, Plaintiff presented to urgent care for headache treatment. R. 116-119. Though Plaintiff complained of headaches during the time period on or before May 6, 2013 (*see, e.g.,* R. 66, 80-81), and the ALJ considered headaches in her decision (R. 27, 28), this record does not provide any information regarding Plaintiff's condition on or before May 6, 2013, but instead only reflects exam results, medications, and treatment plans as of April 16, 2014. As such, it is not chronologically relevant to the time period at issue. *See Wilson*, 2000 WL 719457, at *2. Because Plaintiff has not shown that the records dated March 4, 2014 and April 16, 2014 from Okemah Indian Clinic meet the standards for consideration under 20 C.F.R. §§ 404.970(b), .976(b)(1), 416.1470(b), and .1476(b)(1), the undersigned finds that the Appeals Council did not err in rejecting them.

### e. *Record dated March 26, 2014 from Oklahoma City ENT Clinic*

On March 26, 2014, Plaintiff sought treatment for a "severe sinus infection for over a year." R. 122-130. After an "unremarkable" CT scan of her sinuses, Plaintiff was diagnosed with a headache and allergies, with the examiner noting that "I think she is having a headache that feels like sinus pain." R. 127, 130. Though this record reflects that Plaintiff complained that she had experienced sinus pain prior to May 6, 2013, the record itself does not provide any information relevant to Plaintiff's claims of disabling impairments on or before May 6, 2013, but instead only provides information regarding Plaintiff's sinus pain, and diagnoses of headache and allergies, as of March 26, 2014. As such, it is neither material nor chronologically relevant to the time period at issue. *See Chambers*, 389 F.3d at 1144; *Wilson*, 2000 WL 719457, at *2. Because Plaintiff has not shown that the record dated March 26, 2014 from Oklahoma City ENT Clinic meets the standards for consideration under 20 C.F.R. §§ 404.970(b), .976(b)(1), 416.1470(b), and .1476(b)(1), the undersigned finds that the Appeals Council did not err in rejecting it.

### f. *Records dated June 17, 2014 and July 8, 2014 from Oklahoma Allergy and Asthma Clinic*

On June 17, 2014, Plaintiff presented to the Oklahoma Allergy and Asthma Clinic with complaints of chronic sinus infections, migraines, and allergies, as well as exercise-induced asthma and acute rhinitis. R. 108-14. She followed up on July 8, 2014, for allergy testing and was diagnosed with allergic rhinitis due to pollen, animals, dust mites, and mold; chronic allergic conjunctivitis; moderate persistent asthma; unspecified respiratory abnormality – cough likely multi-factorial including post nasal drip,

GERD/laryngopharyngeal reflux and possible airway obstruction; xerosis cutis; and anaphylaxis due to adverse food reaction. R. 99-107. These records provide information regarding Plaintiff's allergy, sinus, and respiratory conditions—but none of those were presented by Plaintiff as an impairment causing her to be disabled prior to May 6, 2013. Further, the records indicate that Plaintiff complained that she had experienced sinus pain prior to May 6, 2013, the records do not provide any information relevant to Plaintiff's claims of disabling impairments on or before May 6, 2013, but instead only reflect exam results, medications, and treatment plans as of June and July of 2014. As such, these records are neither material nor chronologically relevant to the time period at issue. *See Chambers*, 389 F.3d at 1144; *Wilson*, 2000 WL 719457, at *2. Because Plaintiff has not shown that the records dated June 17, 2014 and July 8, 2014 from Oklahoma Allergy and Asthma Clinic meet the standard for consideration under 20 C.F.R. §§ 404.970(b), .976(b)(1), 416.1470(b), and .1476(b)(1), the undersigned finds that the Appeals Council did not err in rejecting them.

### g. *Record dated July 2, 2014 from Barbara E. Moore, APRN*

On July 2, 2014, Plaintiff sought treatment for breathing difficulties that began "about 2 weeks ago [when] she went to her allergy and asthma appointment and was sent to do pulmonary function tests." R. 94; *see also* R. 99 (July 8, 2014 record from Oklahoma Allergy and Asthma Clinic stating that Plaintiff "reports having a [pulmonary function test] done last visit [June 17, 2014] and has been having difficulties with her breathing since"). Because this medical record relates only to a condition that began after May 6, 2013, it is neither material nor chronologically relevant to Plaintiff's disability

claim. *See Chambers*, 398 F.3d at 1144; *Jones*, 122 F.3d at 1154; *see also Wall*, 561 F.3d at 1064. Because Plaintiff has not shown that the record dated July 2, 2014 from Barbara E. Moore, APRN meets the standard for consideration under 20 C.F.R. §§ 404.970(b), .976(b)(1), 416.1470(b), and .1476(b)(1), the undersigned finds that the Appeals Council did not err in rejecting it.

### B. The ALJ's Step Three Consideration of Fibromyalgia

Plaintiff argues that the ALJ erred by not finding that Plaintiff's fibromyalgia was the medical equivalent of a Listing-level impairment. Social Security Ruling 12-2p provides guidance on the evaluation of fibromyalgia as a cause of disability. *See* SSR 12-2p, 2012 WL 3104869, at *6 (July 25, 2012). Relevant to step three, SSR 12-2p states:

> At step 3, we consider whether the person's impairment(s) meets or medically equals the criteria of any of the listings in the Listing of Impairments in appendix 1, subpart P of 20 CFR part 404 (appendix 1). FM cannot meet a listing in appendix 1 because FM is not a listed impairment. At step 3, therefore, we determine whether FM medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment.

*Id.* at VI(C).

To establish medical equivalence to a Listing, a claimant must "present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *See Sullivan v. Zebley,* 493 U.S. 521, 531 (1990). The ALJ then considers the listed impairment most similar to the claimant's, comparing whether the claimant's medical findings are of at least equal medical significance to findings required for the listed impairment. *See* 20 C.F.R. §§ 404.1526(b)(2), 416.926(b)(2); *see also Finch v. Astrue,*

547 F.3d 933, 938 (8th Cir. 2008) ("Medical equivalence must be supported by medical findings; symptoms alone are insufficient.").

Here, in her step three analysis, the ALJ stated: "[t]here is no evidence of listing level inflammatory arthritis or other listed impairment." R. 30. As Plaintiff notes, this conclusion falls short of a determination that Plaintiff's fibromyalgia, alone or in combination with other impairments, was not *equivalent to* a listed impairment. *See* Pl.'s Br. at 10. In this instance, however, the undersigned finds that such error was harmless and does not require remand.

Plaintiff asserts that her fibromyalgia should have been assessed under Listing 14.09D. Pl.'s Br. at 10-11. Listing 14.09 is for Inflammatory Arthritis, of which its Part D requires:

> Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living[;]
>
> 2. Limitation in maintaining social functioning[; or]
>
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. pt. 404, subpt. P, app. 1, § 14.09D. Thus, even assuming that Plaintiff had repeated manifestations of fibromyalgia that were medically equivalent to the listed "repeated manifestations of inflammatory arthritis," *and* assuming that she suffered from at least two of the listed constitutional symptoms, Plaintiff would still be required to establish the equivalent of a marked limitation in one of the listed areas of functioning in order to establish medical equivalence to Listing 14.09D. *See id.*

Other findings made by the ALJ preclude such a result. Plaintiff asserts that her testimony regarding social functioning supports a finding of marked limitation in that area, and cites to her hearing testimony. Pl.'s Br. at 10-11 (citing R. 76, 77). However, the ALJ considered similar criteria when assessing whether Plaintiff satisfied the "paragraph B" requirements of Listing 12.04 for affective disorders and 12.06 for anxiety related disorders, and concluded that Plaintiff had mild restrictions in activities of daily living, mild difficulties in social functioning, and moderate difficulties in concentration, persistence, or pace. R. 31. The ALJ's findings of mild and moderate—but not marked—limitations in the referenced areas of functioning are not challenged by Plaintiff.

"[A]n ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment." *Fischer-Ross*, 431 F.3d at 733; *see also Kennerson v. Colvin*, No. ED CV 14-01290-DFM, 2015 WL 3930167, at *2 (C.D. Cal. June 25, 2015) (finding ALJ's conclusion that plaintiff did not meet Paragraph B requirements for Listing 12.04 "would have precluded" a finding that plaintiff's fibromyalgia medically equaled Listing 14.09D). Thus, even if the ALJ had properly assessed Plaintiff's fibromyalgia's equivalence to Listing 14.09D, her analysis under Listings 12.04 and 12.06 would have precluded a finding in Plaintiff's favor at step three. Therefore, Plaintiff is not entitled to reversal or remand based on the error at step three.

*C. The ALJ's Step Four Determinations*

1. <u>RFC Assessment</u>

Plaintiff argues that in determining her RFC, the ALJ failed to include "minimal limitations that would result from Plaintiff's fibromyalgia, as evidenced in her medical records." Pl.'s Br. at 12. Specifying these limitations, Plaintiff asserts that her fibromyalgia "cause[s] her to [lie] flat on her stomach the majority of the day" and "would . . . cause her to take unscheduled breaks." *Id.* Plaintiff refers only to her hearing testimony as support for her contention that she has to lie flat all day, and cites nothing in support of her contention that she would have to take unscheduled breaks. *See id.* (citing R. 78).

In her decision, the ALJ recognized Plaintiff's testimony regarding her need to "[lie] flat all day or 80% of the day" and to "change positions frequently," but found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were "not entirely credible." R. 33-34. Plaintiff does not directly challenge this credibility assessment. *See* Pl.'s Br. at 11-13.

The ALJ also discussed Plaintiff's extensive medical records (R. 25-30) and pointed out that Plaintiff had reported that she was functioning "very well" on her medications (R. 33), that physical examinations indicated no restricted ranges of motion (R. 34, 35), and that the "record is devoid of recommendations whatsoever by any treating physicians to limit her activity in any way; in fact, activity has been strongly recommended." R. 34. The ALJ further noted that:

The evidence does not support a finding that the claimant's level of functioning is so limited that all work activity is precluded. In light of the extreme limitations testified to by the claimant at the hearing, one might expect a treating physician to limit her activities. Significantly, although the claimant has had a plethora of specialists and treating physicians, there is not a single medical source statement from a treating or examining source that places limitations on the claimant's activities. To the contrary, her treating physicians have encouraged the claimant to get active. When the claimant insisted on a temporary handicap sticker Dr. Gillan gave one, but he strongly advised her to get some activity. In July 2012, Dr. Gillan also advised the claimant to do swimming and water aerobic exercises. She has been advised to pursue weight reduction to obtain significant pain relief as well. There is no gap in medical treatment in this case and the objective findings are rather mild and consistent with each other.

R. 34 (internal citations omitted). Finally, the ALJ reviewed the opinion evidence of record from the reviewing state agency medical consultant and gave it limited weight, noting that "[o]ther evidence received at the hearing level shows the claimant is more limited than first thought and the [ALJ] has resolved some doubt in favor of the claimant regarding limitations caused by pain." R. 34.

It was Plaintiff's burden to provide evidence of limitations caused by her medically determinable impairments. *See Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). "The mere presence of a condition is not necessarily disabling. Rather, a condition, alone or in combination with other impairments, must render claimant unable to engage in any substantial gainful employment." *Walters v. Colvin*, 604 F. App'x 643, 648 (10th Cir. 2015) (citations, brackets, and internal quotation marks omitted). Here, Plaintiff has not established any functional limitations that the ALJ failed to include in her RFC determination and the undersigned finds that substantial evidence supports the ALJ's determination. *See Maestas v. Colvin*, 618 F. App'x 358, 361 (10th Cir. 2015)

(finding RFC analysis was supported by substantial evidence when plaintiff failed to cite anything "specific in the medical records to support his alleged functional limitations" and ALJ had found that plaintiff's "own assessment of his limitations lacked credibility"); *see also Adams v. Colvin*, 553 F. App'x 811, 814-15 (10th Cir. 2014) ("The problem with [plaintiff's] argument [that the ALJ failed to include any limitations related to his impairment] is that the record indicates no functional limitation as a result of [that impairment].")*; Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004); *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (finding that an ALJ need not account for a limitation belied by the record when setting a claimant's RFC). Absent support in the record for the limitations now claimed by Plaintiff, the ALJ did not err by failing to include those limitations in the RFC assessment.

2. Hypothetical Questions to the VE

Plaintiff further asserts that the ALJ erred in two respects regarding the hypothetical questions she posed to the VE. First, Plaintiff alleges that "the ALJ failed to present to the [VE] a hypothetical question addressing all limitations supported by the medical evidence[] and Plaintiff's testimony." Pl.'s Br. at 12. It is well-settled, however, that a hypothetical question posed to the VE is sufficient if "it contained all of the limitations found to exist by the ALJ," *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000), so long as the ALJ's finding is supported by substantial evidence in the record. As discussed above, Plaintiff has not established that the ALJ should have included in her RFC the limitations she now claims on appeal. Therefore, the ALJ was not required to include these limitations in her hypothetical question to the VE.

Second, Plaintiff argues that the ALJ erred in not accepting the VE's answers to questions that contained limitations regarding "a sit/stand option at will," absenteeism caused by migraines, or the need to take narcotic medications such as Lortab. Pl.'s Br. at 12-13. Again, the ALJ was not required to accept the VE's opinion regarding the availability of jobs to a person subject to those limitations, as she concluded that those limitations were not supported by the record. *See Brescia v. Astrue*, 287 F. App'x 626, 631 (10th Cir. 2008); *see also Bean v. Chater,* 77 F.3d 1210, 1214 (10th Cir. 1995) (finding ALJ was not required to accept VE's answer to hypothetical question that included limitations "claimed by plaintiff but not accepted by the ALJ as supported by the record").

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by May 13, 2016. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 29th day of April, 2016.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE